UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

JOHNATHAN DONNELL PATRICK, SR. AND    CASE NO. 12-03042-NPO
ANGELA LETITIA PATRICK,

  DEBTORS.    CHAPTER 13

MEMORANDUM OPINION AND ORDER
SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION

This matter came before the Court for hearing on December 3, 2012 (the "Hearing"), on the Trustee's Objection to Confirmation (the "Objection") (Dkt. No. 25) filed by Harold J. Barkley, Jr., Chapter 13 Trustee (the "Trustee"), and the Response to Trustee's Objection to Confirmation (the "Response") (Dkt. No. 65) filed by Johnathan Donnell Patrick, Sr. ("Mr. Patrick") and Angela Letitia Patrick ("Mrs. Patrick," or together with Mr. Patrick, the "Debtors") in the above-referenced bankruptcy case. At the Hearing, Todd Johns represented the Trustee, and Frank H. Coxwell, III, represented the Debtors. Having considered the pleadings and the arguments of counsel, the Court finds for the following reasons that the Objection is well taken and should be sustained.[1]

**Jurisdiction**

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Notice of the Objection was proper under the circumstances.

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**Facts**

1. The Debtors voluntarily filed a joint petition for relief (the "Petition") (Dkt. No. 1) under chapter 13 of the U.S. Bankruptcy Code[2] on September 21, 2012. In connection with the Petition, the Debtors filed numerous statements and schedules regarding their current income and expenses, including Schedules I and J, and Form B22C.

2. Schedule I, entitled "Current Income of Individual Debtor(s)," ("Schedule I") (Dkt. No. 6) shows that Mr. Patrick's average monthly income is $2,687.84. Schedule I indicates that Mrs. Patrick receives Social Security benefits of $695.00 per month and another $498.00 per month for a dependent child. According to Schedule I, the Debtors' combined average monthly income, including $1193.00 in Social Security benefits, is $3,880.84.

3. The Debtors' Form B22C, entitled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income") ("Form B22C") (Dkt. No. 5) lists the current monthly income of the Debtors as $4,060.75. Form B22C does not appear to include Mrs. Patrick's Social Security benefits, and in accordance with § 101(10A), there is no place on Form B22C for reporting Social Security income. The Debtors claim a household size of five on Form B22C. (Dkt. No. 5). Their income is below the median family income in Mississippi for the size of their household.

4. Schedule J, entitled "Current Expenditures of Individual Debtor," ("Schedule J") (Dkt. No. 6) reports average monthly living expenses of the Debtors of $3,245.84.[3] If these

---

[2] Hereinafter, the "Code" refers to the United States Bankruptcy Code found at Title 11 of the United States Code, and all code sections refer to the Code unless otherwise noted.

[3] Because the Debtors' income is below Mississippi's median income for a family of five, their disposable income is determined by subtracting their actual expenses as listed on Schedule J, as opposed to the standard expenses allowed above-median-income debtors in Form B22C.

expenses are deducted from the Debtors' combined average monthly income, the result, as shown in Schedule I, is a monthly net income of $635.00.

5. In their Chapter 13 Plan (the "Plan") (Dkt. No. 33), which they amended on October 7, 2012, the Debtors propose to pay the Trustee $146.70 per week for five (5) years. The Plan payment corresponds roughly to the monthly net income shown on Schedule J ($635.00). If the Debtors complete the Plan, they will be entitled to a general discharge of all their debts. 11 U.S.C. § 1328(a).

6. The Debtors propose to make payments in the Plan on four secured claims totaling approximately $30,000.00. The claims are secured by certain household goods and three automobiles: a 1993 Buick Regal, a 2008 Dodge Dakota, and a 2009 Dodge Caliber.

7. In the Plan, the total aggregate amount of the Debtors' unsecured debt is $24,461.20. They propose to pay unsecured creditors $1,300.00 or 6.2% of the total unsecured debt, whichever is less.

8. In the Objection, the Trustee contends that the Plan was not proposed in good faith, and that confirmation of the Plan should be denied. As evidence of the Debtors' lack of good faith, the Trustee maintains that the Plan provides for payment of items that are not reasonably necessary for the maintenance or support of the Debtors or their dependents. *See* 11 U.S.C. § 1325(b)(2)(A)(i). The Trustee points to Schedule J, which reflects payment of two living expenses that "appear high": $400.00 per month for clothing and $200.00 per month for recreation. (Obj. ¶ 5). In addition, the Trustee questions a "credit union deduction of $690.57 per month." (Obj. ¶ 4). The Trustee also contests the Debtors' proposal to keep three automobiles, when only one of the Debtors is employed. (Obj. ¶ 6). According to the Trustee, the Debtors should cease the credit union deduction, abandon at least one of the automobiles, and

reduce their expenses for clothing and recreation, all of which would result in an increase in the payment to unsecured creditors. The Trustee admits, however, that even if these reductions are applied, unsecured creditors would not be paid in full.

10. In their Response, the Debtors explain that the "credit union deduction was deposited to the debtor's bank account and was formally used by the debtor to pay the car loans." (Resp. ¶ 2). The Debtors further contend that Mrs. Patrick's Social Security benefits are exempt from "projected disposable income" and, therefore, they are "free to use the money to fund the plan and for any other purpose." (Resp. ¶¶ 3-4). They make no other effort to show that the contested expenses are reasonably necessary.

## Discussion

The confirmation of a chapter 13 plan is governed by the requirements set forth in § 1325, including the requirement that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). In order to satisfy this condition, Mrs. Patrick voluntarily contributed her Social Security benefits to fund the Debtors' Plan. Without the contribution of her Social Security benefits, the Debtors' Plan would not be feasible due to a lack of disposable income, which counsel for the Debtors conceded at the Hearing. As noted previously, the net income in Schedule J, which includes the Social Security benefits, is roughly the same as the Plan payment.

The present dispute concerns the Debtors' proposed distribution of Social Security benefits in the Plan and the requirement in § 1325(a)(3) that "the plan [be] proposed in good faith and not by any means forbidden by law." In proceedings to confirm a plan, the debtor has the burden of proving good faith. *Suggs v. Stanley (In re Stanley)*, 24 Fed. Appx. 343, 346 (5th Cir. 2007) (unpublished). If the Court determines that the chapter 13 Plan has not been filed in

good faith, then it must deny confirmation. 11 U.S.C. § 1325(a)(3). In this determination, the Court considers the "totality of the circumstances." *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir. 1987) ("*Chaffin I*"), *modified, In re Chaffin*, 836 F.2d 215, 216-17 (5th Cir. 1988) ("*Chaffin II*").

To meet their burden of proving that the Plan was filed in good faith, the Debtors rely upon the holding of the U.S. Court of Appeals for the Fifth Circuit in *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220 (5th Cir. 2012). There, the Fifth Circuit held that debtors who refused to fund a chapter 13 plan using their Social Security benefits did not violate the good faith standard *per se*. The issue addressed in *Ragos* concerned the requirement in § 1325(b)(1)(B) that a chapter 13 plan devote all "projected disposable income," to the benefit of unsecured creditors during the "applicable commitment period."[4] 11 U.S.C. § 1325(b)(1)(B). As noted by the U.S. Supreme Court, "Congress enacted this requirement "to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Services*, 131 S. Ct. 716 , 721 (2011) (emphasis in original).

In *Ragos*, the Fifth Circuit began its analysis with the definition of the term "disposable income." The Code defines "disposable income" as "*current monthly income* received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or the dependent of the debtor." 11 U.S.C. § 1325(b)(2) (emphasis added). Current monthly income ("CMI"), in turn, is defined broadly as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" during the six months preceding the commencement of the case. 11 U.S.C. § 101(10A)(A). In the next section of the same statute, however, Social Security income is specifically excluded from the definition of CMI. 11 U.S.C. § 101(10A)(B). Although there is no definition in the

---

[4] This requirement applies when the trustee or an unsecured creditor objects to confirmation of the plan, which the Trustee did in this case.

Code of "*projected* disposable income," the U.S. Supreme Court in *Hamilton v. Lanning*, 130 S. Ct. 2464, 2478 (2010), ruled that projected disposable income equals disposable income unless changes in the debtor's future income or expenses are "known or virtually certain" to occur at the time of plan confirmation. *See In re Cooper*, No. 11-52095-KMS (Bankr. S.D. Miss. Aug. 3, 2012).

In *Ragos*, the Fifth Circuit ruled that by excluding Social Security benefits from the definition of CMI, Congress intended also to exclude them from the "projected disposable income" calculation. For this reason, the *Ragos* Court held that it was not a *per se* violation of the good faith requirement in § 1325(a)(3) for debtors to retain the disposable portion of their Social Security benefits for themselves rather than pay it to their unsecured creditors. The Fifth Circuit cited the Sixth Circuit Court of Appeals in *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011), and the Eighth Circuit Court of Appeals in *In re Carpent*er, 614 F.3d 930 (8th Cir. 2010), as decisions supporting its conclusion.

The Debtors urge the Court to extend the holding in *Ragos* to embrace Social Security benefits distributed *inside* a plan. Specifically, the Debtors ask the Court to find that the living expenses they listed in Schedule J, and the collateral they propose to keep, are not subject to determination by this Court as to whether they are reasonably necessary. For this argument, the Debtors do not earmark Mrs. Patrick's Social Security benefits for payment of any specific expense but contend that the protection applies *in toto*. Counsel for the Debtors explained at the Hearing that the Debtors could have omitted Mrs. Patrick's Social Security benefits from Schedules I and J altogether, and Mrs. Patrick could have spent the monies as she pleased, except for any restrictions imposed by Social Security regulations. Any other interpretation of *Ragos*, according to the Debtors, would dilute the special status afforded Social Security benefits. The

Debtors' argument requires the Court to examine the protections afforded Social Security benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.*, a matter to which the Court now turns.

The Social Security Act was enacted in 1935 to "save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering v. Davis*, 301 U.S. 619, 641 (1937). To ensure that "the moneys paid or payable" would actually serve this purpose, Congress enacted a law protecting Social Security benefits from seizure by creditors:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Social Security Act § 207, 42 U.S.C. § 407(a). The U.S. Supreme Court has interpreted 42 U.S.C. § 407(a) as protecting Social Security benefits even after they have been paid to and received by the beneficiary. *See, e.g., Philpott v. Essex Cty. Welfare Bd.*, 409 U.S. 413, 417 (1973) (holding that 42 U.S.C. § 407 protects Social Security benefits deposited in a checking account). In 1983, a new subsection was added to clarify that no provision of law could override the inalienability of Social Security benefits except by "express reference" to 42 U.S.C. § 407: "No other provision of law, enacted before, on, or after the date of enactment of [42 U.S.C. § 407], may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section." 42 U.S.C. § 407(b).

Two provisions in the Code reflect these same protections for Social Security benefits paid a debtor in bankruptcy. In § 522(d)(10)(A), the right of a debtor to receive Social Security benefits is exempt from the bankruptcy estate. Also, as previously mentioned, CMI specifically

excludes benefits received under the Social Security Act from its definition. 11 U.S.C. § 101(10A)(B).

As a threshold matter, the Court notes that the Debtors' proposal to use Mrs. Patrick's Social Security benefits to fund the Plan is proper and not an indication of bad faith.

> [T]he Court cannot compel the Debtors to include [Social Security] benefits in their calculation of disposable income. But there is nothing in [11 U.S.C. § 101(10A)] that precludes the Debtors from voluntarily devoting a portion of their [Social Security] income to a chapter 13 plan or that prevents the Court from considering that income in evaluating the feasibility of a plan proposed by the Debtors.

*In re Schanuth*, 342 B.R. 601, 605 (Bankr. W.D. Mo. 2006). Indeed, in *Ragos,* whether the debtors could voluntarily include a portion of their Social Security benefits in their plan was unchallenged. Moreover, it is well settled that chapter 13 relief is available even to an individual who receives only Social Security benefits. *In re Murphy*, 226 B.R. 601, 604-05 (Bankr. M.D. Tenn. 1998). The eligibility of a debtor for chapter 13 relief is controlled by the definition in § 101(30) of an "individual with regular income," which includes any "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter of this title." 11 U.S.C. §§ 101(30), 109(e).

Importantly, the Trustee's challenge here is not whether Mrs. Patrick must commit her Social Security benefits to the Plan. In this critical way, it differs from the argument made by the trustee in *Ragos*. Here, the Trustee contests whether the Debtors' proposed use of projected disposable income, which includes Social Security benefits, was reasonable. Simply put, the excessive recreation and clothing expenses and the third car must go, according to the Trustee. In *Ragos*, on the other hand, the trustee did not object to the calculation of expenses by the debtors. *Ragos*, 700 F.3d at 226; s*ee also In re Ragos*, 466 B.R. 803, 811 (Bankr. E.D. La. 2011)

(noting that trustee deemed the expenses in Schedule J "reasonable and necessary to their support and maintenance"). The Trustee in this case makes no such concession.

Although in both *Ragos* and in this case there is an effort to increase the disposable income in order to increase the distribution to unsecured creditors, the similarity ends there. Whereas *Ragos* concerned the "income" side of the disposable income calculation, this case concerns the "expense" side of the disposable income calculation. Clearly, *Ragos* does not support the Debtors' argument that the Court lacks authority to consider the reasonableness of the expenses and items inside the Plan merely because the Plan is funded in part by Social Security benefits.

Other than their reliance on *Ragos*, the Debtors make no attempt to prove the reasonableness of the expenses and items in question. On these facts, where the Debtors are below-median-income, where Mrs. Patrick voluntarily included Social Security benefits to fund the Plan, where the Plan is not feasible unless the Social Security benefits are voluntarily included in the Plan, where the Plan proposes to retain a third automobile and includes expenses that are not reasonably necessary, and where unsecured creditors are not being paid in full, the Court finds that the Debtors have not satisfied their burden of proving good faith, and the current Plan should not be confirmed. Unlike *Ragos*, the Debtors in this case are not "merely doing what the Code permits them to do." *Ragos*, 700 F.3d at 227. Therefore, this Court has the authority to determine the reasonableness of the expenses and items in the Plan even though Social Security benefits are included in the Plan.

**Conclusion**

This case requires the Court to balance the conflicting objectives of Congress to "save men and women from the rigors of the poor house"[5] and to "ensure that debtors who *can* pay creditors *do* pay them."[6] Denying confirmation of the Plan, given the totality of the circumstances of this case, maintains the balance between the plain language of the Code and the Social Security Act. *See Ransom*, 131 S. Ct. at 723-24. For the reasons stated herein, the Court finds that the Objection is well taken and should be sustained.

IT IS, THEREFORE, ORDERED that the Objection is hereby sustained.

IT IS FURTHER ORDERED that the Debtors may file an amended plan consistent with this Opinion within fourteen (14) days of the date of this Opinion.

SO ORDERED.

---

[5] *Ransom*, 131 S. Ct. at 721.

[6] *Helvering*, 301 U.S. at 641.